The next argued case is number 17-25-15, Daneshvar v. Kipke. Daneshvar v. Kipke Good morning, Your Honor. May it please the Court. Counsel? Yes, Your Honor. On the last, I think the last page, yeah, the last substantive page of your blue brief, you discuss an e-mail between Mr. Kipke and Ms. Hetke. Am I saying that right? I believe so, yes. And you present that e-mail as a general prior art search. Specifically, you say that Kipke, I'm quoting you, Kipke wrote his colleague Hetke that he was, quote, Yes. What Mr. Kipke actually wrote was, can you guys find Lee's proposal and or e-mail exchange around his Pez electrode concept, splaying out DBS Lee? I'm interested in this because I think that it predates the issue with Mr. Daneshvar. That actually, e-mail actually shows Mr. Kipke presenting a specific reference, not a general search, about which he is already familiar. Correct, Your Honor. And the point Isn't your presentation of the e-mail then directly misleading? It certainly wasn't intentionally so. Now, that's not my question, whether it was intentional. Well, I don't believe it was misleading. You're presenting it as a general request for a general search. The point that we were attempting to make in the brief is that there was an inference to be drawn in Dr. Daneshvar's favor that it was only when faced with the inventorship claim did the named inventors on the 894 patent go and try to find prior art. No, no. What he says is I already know about the prior art. Correct. The point that I'm trying to make is that in the context of summary judgment, where inferences should be drawn in Dr. Daneshvar's favor, the suggestion that they needed references to actually prove what was well known in the art is inconsistent with the court finding When somebody says X, for someone to say, well, that's not true, I know Y, isn't having to go out and prove something. It's the facts exist. Fair enough, Your Honor. And the point on whether it's well known in the art is that at summary judgment, there were inferences to be drawn in Dr. Daneshvar's favor as to whether or not it was well known in the art. And in particular, the guiding element. And there's really two or three key inferences that could have been drawn in his favor that were not. The district court construed shape memory material as, I'm quoting, a material that exhibits a shape memory effect such that it can be temporarily deformed but will return to its original shape or change shape due to temperature, electrical stimulus, or any other suitable mechanism. Correct. Do you contest that construction? No. In fact, Dr. Daneshvar proposed it. I know. I would submit that Dr. Daneshvar's device does meet that claim construction and that there was no support for the district court's finding that the two are different. By asserting inventorship based solely on contributions to Claims 16 and 17 before us, do you agree with Appelli that you waived any argument that you contributed to other claims? Yes, Your Honor. The point so we pursued Claims 16 and 17. I'm sorry. Do you argue that Mr. Daneshvar substantially contributed to Claim 1? So I would submit that what we did on appeal was we looked at the corroborating evidence. We tried to focus the issues for the court focusing on Claims 16 and 17. So you don't argue that he substantially contributed to Claim 1? No, I would submit that he conceived of a guiding member of shape memory material. That guiding member is recited in Claim 1. Where is that in your brief? I believe that you can substantially contribute to Claim 1. Pages 5. Excuse me. So on page 9, for example, in the blue brief, the 894 patent thus describes Dr. Daneshvar's invention, i.e., the concept of attaching a shape memory material to a portion of a neural probe body to form a manipulable joint configured to steer it. How does that say substantial contribution to Claim 1? Well, it's suggesting that the 894 patent describes Dr. Daneshvar's invention, which includes the use of a guiding element of shape memory material. What about on page 9 where you say Mr. Daneshvar's invention is claimed at least in Claims 16 through 17, but you don't mention other claims? I mean, I think the concern is that by not mentioning Claim 1 anywhere, you haven't clearly raised that issue. Well, we're not contesting that Dr. Daneshvar should be found to be an inventor of Claim 1. We focused our appeal on Claims 16 and 17. Okay, so your appeal is limited to Claims 16 and 17. Correct. I mean, to be clear, Dr. Daneshvar does believe that. Then have you nailed that down? Yes, sir. How do you respond to the athlete's argument that you have to show substantial contribution to Claim 1 as an independent claim in order to assert having substantially contributed to dependent Claims 16 and 17? Sure. Well, I'd submit that Dr. Daneshvar's lab notebook does show a guiding element formed of shape memory material. You just conceded it. I didn't intend to concede that point. Okay. But you still have the problem, do you not, that all of the limitations of Claim 1 and they focus on the rigid against non-rigid are carried over in all of the other claims? Right. Well, if you look at Dr. Daneshvar's lab notebook, it's Appendix 23. I'd be happy to show you how we would read on to that claim. But the rigid portion is at the – Hang on just a second. I'm sorry, sure. I'm going to turn to Page 23. Thank you, Your Honor. Just make sure we follow that. Okay. Okay. Okay. Yeah, okay. So right here you have the side view actuated sort of smack in the middle of the page. Mm-hmm. And there's a – the actuator is up to the left, right, and there's a bend there. The rigid portion would be the portion down to the right of the actuator, and there's an electrode array on that portion. The actuator, along with the portion underneath it, would comprise the guiding element in that it is a form of shape memory material, and it causes – essentially it positions the electrode in place. And I think the district court found that the portion where the actuator is was not properly a guiding element because it included electrodes. But there's nothing in the claims that prevent the guiding element from having electrodes on them. On the previous page at 22, Mr. Dengereau wrote he had, quote, of conductive polymers being used to bend substrates such as in micromuscles work. Mm-hmm. Isn't that highly damaging to your position in terms of the notoriety of the concept? I don't believe so, Your Honor. I think what he's saying there is that – so the micromuscles work wasn't in connection with the brain probe. And what he's saying is generally he's seen the use of polymer actuators. That's consistent with the Smela reference, for example, that the appellees have cited. So what he did is he took the idea of using this conductive polymer and he adapted it for use in a brain probe. And, again, I'd submit that the figure on appendix page 23 shows the guiding element of shape memory material and that that's sufficient to have contributed to Claim 16. Did you argue this in your appellate brief, though? I mean, I have to say, I look at your briefs and I see that you're making two arguments, one of which is that the invention, your, Mr. Danishvar's contribution was not in prior art. But I don't see where you've argued, in fact, that the district court erred when it found that Mr. Danishvar's contribution was to have shape memory material on the electrode portion and not on the guiding element. Well, Your Honor, I'm happy to try to find it for you. But the point, I think the question was, isn't it inconsistent with the invention? And I was trying to explain that under the district court's interpretation of the 894 patent, it's not inconsistent. So on page 5, for example, we... So I see your arguments as being twofold in your blue brief, that Danishvar's notes do not describe use of a shape memory material, okay? Because remember, the district court said that that material, the electrically conjugated polymer, is not shape memory. So that seemed to be one of the things that you were challenging. And the second thing you seemed to be challenging was the, whether Mr. Danishvar's contribution was well known or not. But I don't see you separately in this brief challenging whether Mr. Danishvar's contribution was for an electrode versus a guiding probe. And could you point to me where in your brief that might be? Well, so on pages 4 to 5, we talk about Dr. Danishvar's notebook, and we talk about the use of the... Brief. I'm sorry, the brief. Brief. You're being asked to refer us to the brief. Right, page 4 of the brief, I'm sorry. Oh, okay. Because she said notebook. I'm sorry about that. I meant to say on page 4 we discussed the notebook. So I'll grant you, Your Honor, we didn't directly attack that district court finding. What we did was discuss the idea of Dr. Danishvar's invention being consistent with Claim 1 of the 894 patent, and namely the fact that the actuator is controlled by electrical stimulation. And on page 4, you'll see in Figure 2, there are electrodes on the actuator. Do you think you can, what authority do you have that you can raise arguments by implication in an opening brief? I'm not aware of any, Your Honor. Let me ask you this. Sure. Beyond the information disclosed by prior art, what specifically did Mr. Danishvar contribute to Claims 16 and 17? Well, the use of the shape memory material is a guiding element. I said beyond what's disclosed by the prior art. Well, I don't believe that the guiding element is disclosed by the prior art. In fact, that was the actual, the reason the 894 patent was issued was that they added a guiding element to a probe that was used and claimed in the 673 patent. And I believe Apolli's brief at 2 actually says that the iteration to be protected by the 894 patent was the use of a guiding element that could either be maneuverable with cable or robotics, or it could be biased. So I do not believe, and I do not believe that the use of a guiding element made of shape memory material was disclosed by the prior art. If it had been, the patent would have never issued. Moreover, as we discuss in our brief, the – Can I ask you, is that what you think the district court held? Do you think the district court held that the use of shape memory material on an electrode or a guiding element was conventional? I believe the district court held that it was generally well known to use a polymer actuator or a shape memory material. I don't believe that the district court found the specific use of a shape memory material as a guiding element was known in the art. In fact, the district court's finding as to that cited to the Hetke Declaration, on pages 29 and 30, that discussion isn't focused on shape memory materials. That discussion, or the shape memory materials, are addressed later in Ms. Hetke's Declaration. So it's my understanding, anyway, of the district court's opinion, that there was a finding generally that shape memory materials were known in the art. And in the prosecution history, as we – And have been used maybe in the field of neural probes? Correct, but not – so that's sort of a general statement, that you could use a material that would react to certain stimuli. It would move back to its original shape, not necessarily to steer a – what they would call the carrier into the brain tissue. In your blue brief, you challenge that finding. Do you still challenge that finding, since it's just generic? If the district court's finding is simply generic, that the use of shape memory materials in the field of neural probes was well known, do you challenge that? I would say no, Your Honor. The use of neural – excuse me – shape memory materials in the field was known. It's not a general – Dr. Danishvar didn't think, hey, I'll just use a shape memory material. He came up with a way to use a shape memory material as a guiding element. And I do believe that in our reply brief, we point out that in the original prosecution, Kipke himself told the Patent Office that the Rezae reference didn't teach, quote, simply did not appreciate the benefit attributed to a manipulatable guiding element supporting a longitudinally stable electrode array. And that's in the appendix at 296. So what Mr. Kipke, I believe, is saying there is that the prior art did not disclose the use of a guiding member attached to an electrode array in connection with a neural probe. And I realize I'm running short on time, so I'll reserve the rest. Okay. Let's hear from the other side, and we'll save you a little time. Thank you. 15. All right, Mr. Huget. May it please the Court, Michael Huget on behalf of Daryl Kipke and Neuronexo Technology. I think the Court is honed in on probably the biggest challenge and the biggest problem with the appeal, and that is many of the issues raised here today, the issues raised in the reply brief were waived. They weren't argued. It's based on a claim construction challenge. It's based on what does guiding element mean, what does rigid mean, what does a carrier mean. That's the only way he gets there. Nowhere in any of his briefs does he argue, does he challenge the Court's claim construction. Does he say the Court was wrong in how it construed guiding element, how it was wrong in how it construed carrier. The carrier is a very separate element from the guiding element. That's what the District Court found. That claim construction is not challenged before this Court. So your position is that the claim construction, that for every claim the element must be rigid along its entire length and no flexibility. That's the distinction. That's absolutely the distinction. The shape memory material that the appellant alleges he contributed, he places it on the probe. The probe in the 894 patent, if you will, is a carrier. It has the electrodes.  The electrodes are around the entirety of the probe. It's rigid. It's clearly defined as rigid and unbendable. When he pointed you to the Appendix 23, he pointed you to something that is a probe which bends. That's not been challenged. He's not challenged the claim construction from the lower court. And I think for that reason, that reason alone, the District Court should be affirmed. Now, if the Court has any specific questions, I'm happy to answer them, but I'm more than content to stand on our briefs. Thank you. Okay. Thank you, Your Honors. I guess one thing I'd like to point out is that in the District Court opinion, so we're at summary judgment, right? This is where we are in the proceeding, and that at that stage, Dr. Danishvar did not have a burden to prove his inventorship claim. He had to raise a question of fact as to whether he contributed something significant to Claims 16 and 17. We'd submit he did, and we'd submit that the District Court actually would. Do you agree with your opposing counsel's argument, strong argument, that you're not challenging any of the claim construction? That's correct, and I don't believe that any of the claim constructions preclude Dr. Danishvar from having contributed to Claims 16 and 17. In fact, opposing counsel said that the guiding element has to be a separate sort of structure from the carrier, and I don't believe that's supported with the claim construction. The guiding element's a connecting structure, and on top of our probe is an actuator. That actuator's connected to the electrode array. So I don't believe that, first of all, that there has to be two separate structures, and to the extent there did need to be two separate structures, I believe the actuator connected to the carrier portion, what we'd call the carrier portion, meets the claims. Does that answer your question, Your Honor? Thank you. Thank you both. The case is taken into submission.